**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Thomas Russell, being duly sworn, state as follows:

**Agent Background and Purpose of Affidavit**

1. I am a Border Patrol Agent with the United States Department of Homeland Security (DHS), United States Border Patrol (USBP). I have worked as a Border Patrol Agent (BPA) since August 15, 2011, and I am currently assigned as a Border Patrol Agent - Intelligence (BPA-Intel) at the Newport Station in Swanton Sector. Through my experience as a federal agent, I have participated in numerous federal investigations relating to alien smuggling and to the importation, possession, distribution, and manufacturing of controlled substances. I have been involved in the application for and execution of search and arrest warrants. I have also conducted, participated in, and/or directed surveillance operations and the execution of search warrants, resulting in seizures of controlled substances, ledger books, bank records, telephone books, receipts, and other electronic devices. I have also participated in interviews with aliens who illegally entered the United States, both independently and as part of smuggling operations, and I am familiar with many of the methods smuggling organizations use to assist aliens in illegally entering the United States and to transport them in furtherance of their illegal entry.

2. This affidavit is offered to demonstrate that probable cause exists to believe that on or about May 27, 2025, in the District of Vermont:

    a. Jose Isaias QUEZADA Villena and Kevin Mayquel BERNAL Fuentes, citizens of Chile, knowing or in reckless disregard of the fact that an alien has come to, entered or remained in the United States in violation of law, transported, or moved or

attempted to transport or move, such alien within the United States by means of transportation or otherwise, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).

b. Jeanne Marie MEDEL Garay, a citizen of Chile, and being an alien of Chilean citizenship, entered or attempted to enter the United States at a time or place other than designated by immigration officers, in violation of 8 U.S.C. § 1325(a).

3. The information contained in this affidavit is based on my training and experience, review of law enforcement and immigration records, my own investigation, as well as information I have received from other law enforcement officers involved in the investigation. The following is either known to me personally or has been related to me by persons having direct knowledge of the events described below. It is meant to set forth probable cause and does not include every fact known to law enforcement about the events described below. As such, this affidavit does not set forth all facts that I know from my investigation into this matter. Unless otherwise specified, the statements described herein are related in sum and substance and are not intended as direct quotations.

**Probable Cause**

4. On May 27, 2025, at approximately 8:30 PM, the Royal Canadian Mounted Police (RCMP) called Swanton Sector Dispatch and relayed that a landowner along the United States/Canada Border had reported a single female crossing into the United States from Canada. The reported crossing location was near the Duty Free Americas store in Derby Line, VT. There is no designated Port of Entry at the reported location of the female entering the United States; the closest designated Port of Entry is on I-91, approximately

100 yards west of the Duty Free Americas store.,. The information passed from RCMP specified that the single female had been picked up by a silver Nissan Rogue.

5. Below is a map of the area described above. The white line at the top of the picture indicates the United States and Canada border. The Duty Free Americas store is indicated by the blue shopping bag icon.



6. Swanton Sector Dispatch relayed the information via radio. Border Patrol Agents (BPA) from the Newport Border Patrol Station responded to the area of the reported illegal entry, near the Duty Free Americas in Derby Line, VT. BPA Devon Whipple positioned his marked Border Patrol vehicle at a turn around on the median of I-91 south, approximately 7.5 miles south of the Duty Free Americas store.

7. At approximately 8:40 PM, BPA Whipple observed a silver Nissan Rogue traveling southbound on I-91, away from the suspected crossing location. I understand based on my training and experience that, smugglers use I-91 as a preferred route of rapid egress from

the border after smuggling events. BPA Whipple noticed that the Nissan Rogue was traveling at a high rate of speed, which he noted based on his training and experience was noticeably faster than a typical vehicle would be traveling on this stretch of highway. BPA Whipple observed two or three people in the vehicle and saw what appeared to be the rear passenger ducking or turning their head, as if to avoid detection.

8. BPA Whipple began to follow the vehicle. BPA Whipple noted that the vehicle braked erratically several times after it had passed his location. BPA Whipple stopped the vehicle at approximately 8:42 PM. BPA Whipple identified himself as a Border Patrol Agent and determined that there was a male driver and male passenger, later identified as BERNAL, QUEZADA, as well as a female passenger, MEDEL. All subjects claimed to be citizens of Chile and claimed to have valid visas in their passports. However, none of the subjects could provide immigration documents and were transported to the Newport Border Patrol Station for additional records checks. All three subjects were ultimately found to be illegally present in the United States and were arrested.

9. The original concerned citizen report stated that a single female had illegally entered the United States from Canada and had been picked up in a silver Nissan Rogue. This description matches QUEZADA's vehicle and MEDEL being the only person who crossed at this time and location.

10. At the Newport Border Patrol Station, I attempted to interview all three subjects and advised them of their *Miranda* rights. BERNAL initially chose not to speak with me without an attorney present. Approximately 90 minutes after the initial interview attempt, BERNAL told BPA Jared Westlund that he wanted to speak with me. I returned to the Newport Border Patrol Station Processing area and spoke with BERNAL in the interview

room. After reading BERNAL his *Miranda* rights again, BERNAL agreed to speak with me without an attorney present.

11. BERNAL stated that he is currently living in Elmont, NY on Long Island. He said that he knows QUEZADA from this area of Long Island. BERNAL stated that he and QUEZADA left Long Island about 12:00 PM and drove to the border. BERNAL said that QUEZADA drove and that he was the passenger. He stated that he helped QUEZADA navigate. BERNAL said that the purpose of their trip was to pick up a person who would be waiting along the route that they were given.

12. BERNAL explained that QUEZADA had been communicating with someone in Canada who hired them to travel from New York and pick up a person at the border. BERNAL told me that QUEZADA had been in communication with someone in Canada and that the person in Canada sent QUEZADA maps of a route that they were supposed to travel. BERNAL said that there was supposed to be a person waiting along the route and that they were supposed to pick that person up. BERNAL told me that they traveled along the route they were given and that they encountered a woman near a dirt road and picked her up.

13. BERNAL said that they were hired to pick up a person along the route and then take that person anywhere near New York and drop the person off. BERNAL denied knowing how much he and QUEZADA were supposed to be paid but said that he expected to be paid via Zelle. BERNAL admitted that he needed money and that was the reason he chose to come to the border with QUEZADA. During the interview, BERNAL confirmed that they picked up a single female along the route shown in the maps above, exactly where the crossing was reported by a concerned citizen.

14. BERNAL gave BPAs permission to search his phone and showed BPAs a conversation that he had with QUEZADA via WhatsApp. In this conversation, QUEZADA sent him maps of the route that the two of them were supposed to travel. The images below show the maps that BERNAL said QUEZADA sent to him. These maps show a travel route along Nelson Hill Road and Holland Road, which would take them past the Duty Free Americas store and back onto I-91 south.



15. BERNAL stated that he thought QUEZADA was communicating with a smuggler in Canada and that QUEZADA made the arrangements with the smuggler. BERNAL claimed that he did not coordinate with the person they picked up, stating that they were given a route and followed the route.

16. BPAs records review revealed that MEDEL was previously arrested and removed from the United States in or around March 19, 2025. This review showed that MEDEL does not

have any legal status in the United States according to records checks and could not provide any immigration documents that would allow her to enter or remain in the United States legally.

17. BPAs criminal history records review also revealed negative results for QUEZADA and BERNAL. Immigration history queries revealed that both QUEZADA and BERNAL entered the United States as Visa Waiver Tourists. Both QUEZADA and BERNAL remained in the United States past the date when they were required to depart.

## Conclusion and Request

18. Based on the foregoing, I submit that probable cause exists to believe that on or about May 27, 2025, in the District of Vermont:

    a. Jose Isaias QUEZADA Villena and Kevin Mayquel BERNAL Fuentes violated 8 U.S.C. § 1324(a)(1)(A)(ii) in that they, knowing or in careless disregard of the fact that an alien - Jeanne Marie MEDEL Garay – had come to or entered the United States in violation of law, transported or moved, or attempted to transport or move, such alien within the United States in furtherance of the alien's illegal entry by means of transportation or otherwise.

    b. Jeanne Marie MEDEL Garay violated 8 U.S.C. § 1325(a) in that she, being an alien to the United States as a citizen of Chile, entered or attempted to enter the United States at a time or place other than designated by immigration officers.

19. I respectfully request that the Court issue criminal complaints charging them accordingly.

THOMAS RUSSELL
BORDER PATROL AGENT–INTELLIGENCE
DEPARTMENT OF HOMELAND SECURITY

Subscribed and sworn to in accordance with the requirement of Federal Rule of Criminal Procedure 4.1 on this 28th day of May, 2025.

HONORABLE KEVIN J. DOYLE
United States Magistrate Judge
District of Vermont